UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____ :
                                  :
THOMAS THORNDIKE,                 :
                                  :
          Petitioner,             :     Civ. No. 15-2014 (NLH)
                                  :
     v.                           :     OPINION
                                  :
WARDEN J. HOLLINGSWORTH,          :
                                  :
          Respondent.             :
_____ :

APPEARANCES:
Thomas Thorndike, #20408-014
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640
     Petitioner Pro se

David Bober, AUSA
United States Attorney's Office
402 E. State St., Room 430
Trenton, NJ 07102
     Counsel for Respondent


HILLMAN, District Judge

     Petitioner, Thomas Thorndike, a federal prisoner confined

at the Federal Correctional Institution in Fort Dix, New Jersey,

brings this petition for a writ of habeas corpus, filed pursuant

to 28 U.S.C. § 2241, as a result of his denial of eligibility

for the Residential Drug Abuse Program ("RDAP").  Petitioner has

paid the applicable filing fee. (ECF No. 1).  Respondent filed

an Answer to the Petition on June 1, 2015. (ECF No. 5).

Petitioner also submitted several letters in support of his

Petition and in opposition to Respondent's Answer. (ECF Nos. 4, 6, 8).  For the reasons set forth below, the Petition will be DENIED.

## I.   BACKGROUND

Petitioner pled guilty to aiding and assisting the preparation of a false tax return pursuant to 26 U.S.C. § 7206(2), and making and subscribing to a false tax return pursuant to 26 U.S.C. § 7206(1).  He was sentenced to 72 months' imprisonment.  At some point during his incarceration at FCI Fort Dix, Petitioner sought enrollment into the Residential Drug Abuse Program ("RDAP").  However, Petitioner was refused enrollment into RDAP because a Drug Abuse Program Coordinator determined that he did not meet the criteria for admission.  In his Petition, Petitioner asserts that he is entitled to an "Eligibility Interview" prior to being refused admission. (Pet. 6, ECF No. 1).  Accordingly, he asserts that prison officials are abusing their discretion and violating their own policy by denying him eligibility for RDAP without an interview.

Respondent has filed a response and sets forth three arguments in support of denial of the Petition.  First, to the extent Petitioner challenges the BOP's policy regarding admission into RDAP, Respondent contends that this policy has been consistently upheld by courts as a valid exercise of the Bureau of Prison's discretion. (Resp't's Br. 14-17, ECF No. 5).

2

Furthermore, Respondent explains that Petitioner's argument is based on an outdated Program Statement.  Respondent contends that the current Program Statement (5330.11) superseded the one referenced by Petitioner in his Petition.  Respondent states that, under the current version, an inmate is not required to be interviewed in connection with RDAP unless his central file and other collateral documentation provide evidence of substance abuse.

Respondent next argues that, to the extent Petitioner challenges his individual determination, the district court lacks jurisdiction to review the eligibility determination. (Resp't's Br. 17-19, ECF No. 5).  Regardless, Respondent asserts that the Bureau of Prison's decision was appropriate because Petitioner's central file contained no evidence of a substance abuse problem in the 12 months prior to his arrest. (Resp't's Br. 21-22, ECF No. 5).

Finally, Respondent asserts that the Petition should be denied because prison inmates do not have a protected liberty interest in participating in RDAP or receiving a sentence reduction for completing RDAP. (Resp't's Br. 19-21, ECF No. 5).

Petitioner has filed several letters in further support of his Petition and in opposition to the Answer filed by Respondent. (ECF Nos. 4, 6, 8).  Petitioner clarifies that he believes there exist two separate interviews: an "Inmate

Screening Eligibility Interview" and a "Clinical Interview."
(Letter 1, June 25, 2015, ECF No. 8).  Petitioner further states
that he is entitled to the Inmate Screening Eligibility
Interview in addition to a review of his central file.
Petitioner explains that the "verifying documentation [of
substance abuse] . . . are first developed in the Inmate
Screening Eligibility Interview and later formed into a
diagnosis in the Clinical Interview." (Id.).

## II.   STANDARD OF REVIEW

United States Code Title 28, Section 2243, provides in
relevant part as follows:

> A court, justice or judge entertaining an application
> for a writ of habeas corpus shall forthwith award the
> writ or issue an order directing the respondent to
> show cause why the writ should not be granted, unless
> it appears from the application that the applicant or
> person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than
more formal pleadings drafted by lawyers. Estelle v. Gamble, 429
U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).
A pro se habeas petition must be construed liberally. See
Hunterson v. DiSabato, 308 F.3d 236, 243 (3d Cir. 2002).
Nevertheless, a federal district court can dismiss a habeas
corpus petition if it appears from the face of the petition that
the petitioner is not entitled to relief. See Denny v. Schult,

708 F.3d 140, 148 n.3 (3d Cir. 2013); See also 28 U.S.C. §§ 2243, 2255.

### III. DISCUSSION

In 1990, Congress charged the Bureau of Prisons ("BOP") with making available "appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To carry out that requirement, as part of the 1994 Violent Crime Control and Law Enforcement Act, Congress amended § 3621 to require the BOP, subject to the availability of appropriations, to provide residential substance abuse treatment for all "eligible" prisoners. See 18 U.S.C. § 3621(e)(1)(C).

An "eligible" prisoner is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(i)and (ii). As an incentive for successful completion of the residential treatment program, the period of time a prisoner convicted of a nonviolent offense remains in custody after successfully completing such a treatment program may be reduced up to one year by the BOP. See 18 U.S.C. § 1361(e)(2).

The BOP has promulgated regulations to implement these statutory requirements. The pertinent regulation in this case is codified at 28 C.F.R. § 550.53. With respect to this

regulation, BOP Program Statement 5330.11 states that, when an inmate is either referred to RDAP or applies for the program, "[u]pon completion of the Psychology Intake Screening, the psychologist will refer inmates with a substance use history and an interest in treatment to the institution's DAPC [Drug Abuse Program Coordinator]." FEDERAL BUREAU OF PRISONS, PROGRAM STATEMENT 5330.11, PSYCHOLOGY TREATMENT PROGRAMS, § 2.5.8.

    With respect to the screening process, the Program Statement states, in relevant part, that "the DTS [Drug Treatment Specialist] will review an inmate's Central File and other collateral sources of documentation to determine" eligibility. Id.  The Program Statement further clarifies that a Clinical Interview will only be conducted where verifying documentation of substance abuse is found or produced. See Id. at § 2.5.9 ("If verifying documentation is found or produced, and only then, inmates who volunteer for the RDAP will be personally interviewed by the DAPC.") (emphasis added).

    Here, as his only ground for relief, Petitioner states: "The BOP refuses to follow the Congressional approve [sic] Residential Drug Abuse Program (RDAP) Rules 28 C.F.R. § 550.50 and the BOP Statement 5330.11 by allowing me the Eligibility

Interview in concert with the above regulations in order to establish abuse." (Pet. 6, ECF No. 1).

IV.   ANALYSIS

A. Challenge to BOP Policy

To the extent Petitioner means to challenge the BOP's policy or practice regarding eligibility determination for RDAP, his Petition must be denied.  When a statute unambiguously expresses the intent of Congress, the agency must give effect to that intent. See Chevron U.S.A. Inc. V. Natural Res. Def. Council, 467 U.S. 837, 842–43, 104 S. Ct. 2778, 81 L.Ed.2d 694 (1984).  Alternatively, when Congress has left discretion for agency action, the agency's interpretation is entitled to substantial deference under Chevron. See United States v. Mead Corp., 533 U.S. 218, 121 S. Ct. 2164, 150 L.Ed.2d 292 (2001). Where "Congress has 'explicitly left a gap for the agency to fill,' the agency's regulation is 'given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute.'" Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 239, 124 S. Ct. 1741, 1747, 158 L. Ed. 2d 450 (2004) (citing Chevron, 467 U.S. at 843-44).

With respect to the statute in question, 18 U.S.C. § 3621, courts are generally in agreement that the policy and practice of the BOP with respect to RDAP eligibility is a reasonable interpretation. See, e.g., Guttenberg v. Zickefoose, No. 12-

7

4530, 2013 WL 1501797, at *2 (D.N.J. Apr. 11, 2013) ("The BOP policy, which relies upon review of an inmate's pre-sentence investigation report and central file, has been held to be reasonable by many courts.") (citations omitted); Anderson v. Schultz, No. 09-4683, 2010 WL 5017352, at *4 (D.N.J. Nov. 23, 2010) (collecting cases); Montilla v. Nash, No. 05-2474, 2006 WL 1806414, at *3 (D.N.J. June 28, 2006) ("Thus, the challenged policy and practice of the BOP is a reasonable interpretation of the statute.") (citations omitted).

Based on the administrative grievances which Petitioner attaches to his Petition, it appears that Petitioner believes that he was entitled to an eligibility interview prior to a review of the documents in his central file. (Pet'r's BP-10 Attach. 7, ECF No. 1-1).  However, as Respondent points out, Petitioner cites to an outdated Program Statement; namely, to Program Statement 5330.10, § 5.4.1. (Id.).  This Program Statement was superseded in 2009 by BOP Program Statement 5330.11, discussed above.  Accordingly, the outdated Program Statement provides no basis for the habeas relief Petitioner seeks and Petitioner's assertion that he was first entitled to an eligibility interview is without merit.

Additionally, Petitioner's assertion that the Program Statement provides for two separate interviews — an "Inmate Screening Eligibility Interview" and a "Clinical Interview" — is

8

unsupported.  The BOP Program Statement does not include a discussion on an "Inmate Screening Eligibility Interview;" nor is that term ever mentioned.  Rather, the Program Statement provides for a "Psychology Intake Screening," which, as discussed above, consists of a review of the "inmate's Central File and other collateral sources of documentation" and, thus, is not an interview. FEDERAL BUREAU OF PRISONS, PROGRAM STATEMENT 5330.11, PSYCHOLOGY TREATMENT PROGRAMS, § 2.5.8.  Pursuant to the Program Statement, no "Eligibility Interview" is required.  It is only upon discovery or production of verifying documentation as a result of the screening process that an interview — the "Clinical Interview" — will be conducted. Id. at § 2.5.9.

Petitioner's assertion that an "Eligibility Interview" is required appears to be based on two sources: (1) dicta from the opinion of another district court in this circuit, see Lam v. Hufford, No. 3:11-CV-1903, 2012 WL 760595, at *3 (M.D. Pa. Feb. 13, 2012) report and recommendation adopted sub nom. Chuong Lam v. Hufford, No. 3:11-CV-1903, 2012 WL 760591 (M.D. Pa. Mar. 7, 2012); and (2) language contained in a letter Petitioner received in response to an administrative grievance, see (Letter 2, May 9, 2015, ECF No. 4).

With respect to Petitioner's citation to Lam, 3:11-CV-1903, 2012 WL 760595, this Court notes that the court in Lam stated:

> Under these program rules, in order to assess if an
> inmate has a verifiable documented drug abuse problem,
> drug abuse program staff must first determine if the
> inmate has a substance abuse disorder by conducting
> the RDAP Eligibility Interview and by reviewing all
> pertinent documents in the inmate's central file to
> corroborate self-reported information.

Id. at *3 (emphasis added).

We are at a loss to fully understand the Lam court's reference to an "RDAP Eligibility Interview". As discussed above, there is no provision in the current BOP Program Statement which requires any sort of "Eligibility Interview." One explanation may be that Lam was first evaluated in early 2009 under the old Program Statement and that procedure carried through his later evaluations in 2011. Id. at *1, *2. In any event, our review of the current statement indicates that the Lam court relied upon an inaccurate recitation of the RDAP eligibility determination procedure set forth in the BOP Program Statement. Accordingly Lam does not support Petitioner's claims in the context of this habeas Petition.

The letter supplied by Petitioner — which appears to be a response to an administrative grievance — provides similarly misleading language and is also a likely artifact of the old procedure. More specifically, in response to Petitioner's request for a "screening eligibility interview," the Acting Administrator explained that Program Statement 5330.11

> requires staff to determine if inmates requesting RDAP
> have a verifiable documented drug abuse problem within
> the 12 months immediately preceding your arrest for
> the charges which culminated in your current sentence.
> This requires an eligibility interview, followed by a
> review of all pertinent documents compiled in the
> central file to corroborate self-reported information.
> . . . Generally, there must be verification in the
> Presentence Investigation Report (PSR) or other
> similar documents in the central file to support the
> diagnosis [of substance abuse or dependence].

(Letter 2, ECF No. 4) (emphasis added).

The language of this letter likewise seems to suggest that there exists an initial "Eligibility Interview."  However, as set forth above, it is plainly evident from BOP Program Statement 5330.11 that no such interview is required.  While the language in the letter is misleading and, while it may be understandably frustrating for Petitioner who reasonably relied on this document in support of his Petition, it does not, and cannot, change the procedure set forth in BOP Program Statement 5330.11 — a procedure which does not require an "Eligibility Interview;" and a procedure which this Court, like other courts, finds to be a reasonable interpretation of 18 U.S.C. § 3621.

Also, it is evident from another administrative grievance attached to the Petition that Petitioner believes that only documentation of substance "use" is required to trigger the clinical interview requirement. (Pet'r's BP-11 Attach. 3-4, ECF No. 1-1).  Petitioner cites Kuna v. Daniels, 234 F. Supp. 2d 1168 (D. Or. 2002) and Salvador-Orta v. Daniels, 531 F. Supp. 2d

11

1249 (D. Or. 2008) in support of this assertion.  Indeed, the
holding in Kuna suggests that evidence of "use" alone, and not
"abuse or dependence," is enough to provide verifying
documentation.  However, the Court notes that this line of
cases, which are decisions from district courts in another
circuit, are not binding on this Court.

Further, Kuna and Salvador-Orta were decided before 2009;
and, thus, before BOP Program Statement 5330.10 was superseded
by the current version BOP Program Statement 5330.11, discussed
above.  This is significant because the current Program
Statement explicitly notes:

> Recreational, social, or occasional use of alcohol
> and/or other drugs that does not rise to the level of
> excessive or abusive drinking does not provide the
> required verification of a substance use disorder.
> Any verifying documentation of alcohol or other drug
> use must indicate problematic use; i.e., consistent
> with the American Psychiatric Association's Diagnostic
> and Statistical Manual of Mental Health Disorders
> (DSM) criteria.

FEDERAL BUREAU OF PRISONS, PROGRAM STATEMENT 5330.11, PSYCHOLOGY TREATMENT
PROGRAMS, § 2.5.8 (emphasis added).

Accordingly, Petitioner is mistaken that only evidence of
"use" is required.  Rather, the verifying documentation must
indicate "problematic use." Id.  This Court agrees with the
majority of other courts and determines that the BOP's policy —
specifically its policy of declining a Clinical Interview where
there is no verifying documentary evidence of substance abuse,

see id. at § 2.5.9, supra — is reasonable.  Petitioner is not entitled to habeas relief on this ground.

B. Challenge to BOP's individual determination

To the extent Petitioner challenges the BOP's eligibility determination as it applies to him, the Court finds that Petitioner's claim is without merit.

1. Jurisdiction

As an initial matter, Section 3625 of Title 18 of the United States Code is titled "Inapplicability of the Administrative Procedure Act" ("APA").  In relevant part, § 3625 states that the provisions of the APA "do not apply to the making of any determination, decision, or order under this subchapter." 18 U.S.C.A. § 3625.  Included in that subchapter is the statute at issue in this case, 18 U.S.C. § 3621(e). See Crimes and Criminal Procedure, Part II – Criminal Procedure, Chapter 229 – Postsentence Administration, Subchapter C – Imprisonment, 18 U.S.C. §§ 3621-3626 (2015).  Accordingly, many courts take the position that district courts lack jurisdiction to consider challenges to an individualized discretionary decision regarding RDAP eligibility. See, e.g., Standifer v. Ledezma, 653 F.3d 1276, 1279 (10th Cir. 2011) ("To the extent Standifer challenges only the BOP's decision regarding his eligibility for RDAP participation, his argument is expressly foreclosed by 18 U.S.C. § 3625, which prohibits judicial review

13

under the APA of RDAP placement decisions."); Reeb v. Thomas,
636 F.3d 1224, 1228 (9th Cir. 2011) ("Accordingly, we hold that
federal courts lack jurisdiction to review the BOP's
individualized RDAP determinations made pursuant to 18 U.S.C. §
3621 [in light of 18 U.S.C. § 3625.]"); Warman v. Philips, No.
1:08CV217, 2009 WL 2705833, at *2 (N.D.W. Va. Aug. 25, 2009)
aff'd, 353 F. App'x 859 (4th Cir. 2009) ("Pursuant to 18 U.S.C.
§ 3621(b) and (e), determination of eligibility for substance
abuse treatment is within the sole discretion of the BOP and,
pursuant to 18 U.S.C. § 3625, this Court lacks the authority to
review such decisions unless a cognizable constitutional claim
is presented."); see also Johnston v. Thomas, No. 09-1096-MO,
2010 WL 2574090, at *5 (D. Or. June 24, 2010) (collecting cases)
(holding that "Congress intended that BOP rulemaking be
reviewable under the APA, but not its adjudication of specific
cases.").

Several district courts in the Third Circuit have also
taken this position. See United States v. Saul, No. 09-CR-0781-
2, 2014 WL 3508640, at *2 (E.D. Pa. July 16, 2014) ("A federal
court simply lacks habeas jurisdiction to hear a challenge to
the BOP's RDAP decisions with regard to a specific
individual."); United States v. Hughes, No. 06-377-9, 2012 WL
3627466, at *2 (E.D. Pa. Aug. 23, 2012) ("We lack jurisdiction
to review the BOP's individualized determinations as to RDAP

placement and eligibility."). This Court agrees that a challenge to an individualized determination made by the BOP under § 3621 is expressly foreclosed by 18 U.S.C. § 3625, which prohibits judicial review under the APA of RDAP placement decisions.

However, Respondent has not cited to, and this Court has not found, a decision by the Court of Appeals for the Third Circuit which explicitly adopts this approach. Moreover, the Third Circuit has reviewed other individualized BOP decisions — which were made pursuant to statutes in the same sub-chapter as the statute at issue in this case — using the abuse of discretion standard set forth in the APA. See, e.g., Brown v. Warden Fairton FCI, 617 F. App'x 117, 119 n.3 (3d Cir. 2015) (reviewing BOP's application of the factors set forth in § 3621(b) for abuse of discretion); Vasquez v. Strada, 684 F.3d 431, 434 (3d Cir. 2012) (same); Ramos-Rodriguez v. Warden, FCI Fort Dix, 446 F. App'x 417, 419 (3d Cir. 2011) (same).[1]

---

[1]   As set forth above, § 3625 states that the provisions of the APA "do not apply to the making of any determination, decision, or order under this subchapter." 18 U.S.C.A. § 3625. The cases from the Third Circuit Court of Appeals which utilize the "abuse of discretion" standard in reviewing decisions made pursuant to statutes in the same subchapter as § 3625 do not explicitly cite to the APA as the basis for the abuse of discretion standard employed.  Instead, these cases trace the authority to review under an abuse of discretion standard back to the holding in Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990). See, e.g., Ramos-Rodriguez, 446 F. App'x at 419 (citing Barden); Vasquez, 684 F.3d at 434 (citing Barden); see also

Further, several district courts in this circuit have reviewed the BOP's individual RDAP eligibility determinations under § 3621(e) — the statute at issue in this case — using the "arbitrary, capricious, [or] abuse of discretion" standard set forth in the APA. 5 U.S.C. § 706(2); see also, e.g., Guttenberg, No. 12-4530, 2013 WL 1501797, at *3 ("Here, this Court finds that the BOP did not abuse its discretion in determining that Petitioner was unqualified to participate in the RDAP program."); Lam v. Hufford, No. 3:11-CV-1903, 2012 WL 760595, at *4 (M.D. Pa. Feb. 13, 2012) report and recommendation adopted sub nom. Chuong Lam v. Hufford, No. 3:11-CV-1903, 2012 WL 760591 (M.D. Pa. Mar. 7, 2012) (internal quotations and citations

---

Barden, 921 F.2d at 478 ("Any further court review of the Bureau's action will be limited to abuse of discretion."). As an initial matter, the statute at issue Barden was 18 U.S.C. § 4082(b), which is not in the same subchapter as § 3625, and, thus, was not foreclosed to review under the APA by statute.  Moreover, although the Barden court does not provide a specific source or citation for the "abuse of discretion" standard it suggested, this standard is referenced only twice in the opinion, and it is evident that the Barden court adopted the standard by citing to a case from the United States Court of Appeals for the District of Columbia. See Farmworker Justice Fund, Inc. v. Brock, 811 F.2d 613, 620 (D.C. Cir.) vacated sub nom. Farmworkers Justice Fund, Inc. v. Brock, 817 F.2d 890 (D.C. Cir. 1987).  The District of Columbia case, in turn, cited directly to the APA. See id. ("Second, an agency may not abuse its discretion.  Even within the scope of authority established by statute, an agency's decision may nonetheless be 'arbitrary' or 'capricious.'") (citing 5 U.S.C. § 706(2)(A)).  Thus, the abuse of discretion standard referenced in Barden, and utilized by the Third Circuit in its review of individual determinations made by the BOP, is derived from the APA.

omitted) ("Instead, it has been consistently held that in the absence of a showing that the Bureau of Prisons' decision was 'arbitrary, capricious, or an abuse of discretion', [] or '[a]bsent an allegation that the BOP violated established federal law, the United States Constitution, or exceeded the its statutory authority in making the determination that Petitioner was ineligible for RDAP, the Court does not have jurisdiction to review Petitioner's claim.'"); Anderson v. Schultz, No. 09-4683, 2010 WL 5017352, at *4 (D.N.J. Nov. 23, 2010) ("In this case, there was no abuse of discretion in the BOP's application of the policy to Petitioner."); Fuentes v. Samuels, No. 07-2336, 2008 WL 442211, at *7 (D.N.J. Feb. 14, 2008) ("In essence, the question presented in the Petition is whether the BOP's determination that Petitioner is not eligible for the RDAP under 18 U.S.C. § 3621(b)(5), (e)(1), 28 C.F.R. § 550.56(a), and Program Statement 5330.10 § 5.4.1, was arbitrary and capricious and must be set aside under the Administrative Procedure Act.").

In light of this somewhat conflicting case law, the Court will assume, without deciding, that it has jurisdiction to review the BOP's individual determination for "abuse of discretion". For the reasons set forth below, there is nothing before the Court to suggest that the BOP's individual determination with respect to Petitioner's eligibility for RDAP was arbitrary, capricious, or an abuse of discretion. Assuming

jurisdiction exists, the Petition would be denied on the merits, as discussed below.

2. <u>Merits</u>

In this case, a Drug Treatment Specialist ("DTS") reviewed Petitioner's central file on May 28, 2014. (Resp't's Br. 12, ECF No. 5); (Ex. 1, RDAP Screening Summary, ECF No. 5-7). Specifically, the DTS reviewed Petitioner's Presentence Investigation Report ("PSI"), which indicated that Petitioner never participated in substance abuse treatment.  Moreover, "[i]n regard to alcohol, [Petitioner] related that he consumes it occasionally but has never experienced an addiction to it. He further related that he has never experimented with illegal drugs of any kind." (Ex. 1, RDAP Screening Summary, ECF No. 5-7).  As discussed above, evidence of mere "use" is insufficient to establish eligibility for RDAP.  Rather, "any verifying documentation of alcohol or other drug use must indicate problematic use." FEDERAL BUREAU OF PRISONS, PROGRAM STATEMENT 5330.11, PSYCHOLOGY TREATMENT PROGRAMS, § 2.5.8.  The DTS's report explicitly states that Petitioner's "PSI does not support a problematic pattern of drug use during the target period." (Ex. 1, RDAP Screening Summary, ECF No. 5-7).  Because no documentation of substance abuse was found, the DTS determined that Petitioner was not qualified for RDAP and, therefore, he was not referred for an interview. (<u>Id.</u>).

The record in this case indicates that the BOP's decision
to deny Petitioner entry into RDAP "was a discretionary one
based upon valid and facially neutral factors." <u>Lam</u>, No. 3:11-
CV-1903, 2012 WL 760595, at *5.  Therefore, it cannot be said
that the BOP's decision was "arbitrary, capricious, or an abuse
of discretion."  Accordingly, Petitioner's claim is without
merit and will be denied. <u>See, e.g.</u> <u>Connelly v. Bureau of
Prisons</u>, No. 13-3966, 2013 WL 5592413, at *1 (D.N.J. Oct. 10,
2013) (dismissing petition because petitioner's presentence
investigation report indicated that Petitioner had no alcohol or
controlled substance abuse issues); <u>Guttenberg</u>, No. 12-4530 RMB,
2013 WL 1501797 (same)[2]; <u>Anderson</u>, No. 09-4683, 2010 WL 5017352,
at *4 ("The Court's review of the PSR demonstrates that the BOP

---

[2] The Court notes that Petitioner references <u>Guttenberg v.
Zickefoose</u>, No. 12-4530, 2013 WL 1501797 (D.N.J. Apr. 11, 2013),
in his letter (ECF No. 8) submitted in response to Respondent's
Answer.  Specifically, Petitioner asserts that this case is
distinguishable because the inmate in <u>Guttenberg</u> "got an
interview." (Letter 2, June 25, 2015, ECF No. 8).  To the extent
Petitioner believes that the inmate in <u>Guttenberg</u> received the
type of "Inmate Screening Eligibility Interview" Petitioner
seeks in the instant Petition, he is mistaken.  The "interview"
referenced in <u>Guttenberg</u> was a "presentence report interview"
which resulted in the "presentence investigation report (PSI)
[that] was used in part to assess his eligibility [for RDAP]."
<u>Guttenberg</u>, No. 12-4530, 2013 WL 1501797, at *1-2.  The court's
opinion in <u>Guttenberg</u> does not indicate that the inmate there
received some type of interview that Petitioner here was denied.
Rather, the opinion establishes that the inmate in <u>Guttenberg</u>,
like Petitioner in this case, was deemed ineligible for RDAP
participation because there was no evidence of substance abuse
in his file. <u>Id.</u>

did not abuse its discretion, as there is no indication of drug
use [during the relevant time period].").

   C. Challenge based on deprivation of liberty interest

     To the extent Petitioner means to assert a due process
violation or a deprivation of a liberty interest in reduction of
sentence as a result of the BOP denying him entry into RDAP, his
Petition is without merit.  Upon successful completion of a drug
treatment program, the BOP has the discretion to alter the
prisoner's conditions of confinement and to reduce his term of
imprisonment, but sentence reduction is not mandatory. See Lopez
v. Davis, 531 U.S. 230, 121 S. Ct. 714, 148 L. Ed. 2d 635
(2001).  Moreover, it is well established that no liberty
interest exists in receiving a sentence reduction. See Sandin v.
Conner, 515 U.S. 472, 484 (1995) (holding that liberty interests
afforded to prisoners are "generally limited to freedom from
restraint which . . .  imposes atypical and significant hardship
on the inmate in relation to the ordinary incidents of prison
life.").  "Thus, denial of entry in the RDAP program and
subsequent ineligibility for potential sentence reduction after
participation in RDAP is not an 'atypical and significant
hardship' upon an inmate." Guttenberg, No. 12-4530, 2013 WL
1501797, at *3; see also, e.g., Garcia v. Zickefoose, No. 12-
1657, 2013 WL 5406630, at *4 (D.N.J. Sept. 25, 2013)
("Petitioner's due process rights would not be implicated

because he has no liberty interest in a sentence reduction under
§ 3621(e).") (collecting cases); <u>Washington v. Zickefoose</u>, No.
12-303, 2012 WL 5247623, at *3 (D.N.J. Oct. 24, 2012)
(collecting cases) (finding no protected liberty interest under
§ 3621(e)).

D. <u>Discrimination</u>

The Court notes that Petitioner makes references to
discrimination in his letters.  Specifically, in his letter
dated June 15, 2015 he writes, "[t]he discrimination does
continue.  And it becomes much more flagrant." (ECF No. 6).  He
later explains that he believes the BOP Psychology Department
has a goal of "helping minorities over all others." (Letter 2,
June 25, 2015, ECF No. 8).  Presumably, Petitioner is not a
minority and believes he was deemed ineligible for RDAP on that
basis.

However, as set forth above, this Court concludes that the
BOP's individual determination with respect to Petitioner's
eligibility for RDAP was not arbitrary, capricious, or an abuse
of discretion.  Accordingly, any claim that Petitioner was
denied eligibility for discriminatory reasons is unsupported and
will be denied.  Further, as set forth above, Petitioner does
not have a liberty interest in participation in RDAP or in the
potential reduction of sentence which may result from successful
completion.  Therefore, any claim Petitioner has that he was

denied due process — i.e., discriminated against — in the
eligibility determination procedure is denied because, without a
liberty interest, Petitioner is not entitled to the minimum
procedures required by the Due Process Clause. See Wolff v.
McDonnell, 418 U.S. 539, 557, 94 S. Ct. 2963, 2963 41 L.Ed.2d
935 (1974).

   E. Equal Protection

   Finally, in construing the Petition liberally, as this
Court must, see Hunterson, 308 F.3d at 243, it is conceivable
that Petitioner means to assert an equal protection claim.
Specifically, in his letters dated June 15, 2015 and June 25,
2015, he refers to his right to be "treated equally" and to a
"ban on racial preferences." (ECF Nos. 6, 8).

   The Equal Protection Clause guarantees that "all persons
similarly circumstanced shall be treated alike." Plyler v. Doe,
457 U.S. 202, 216, 102 S. Ct. 2382, 72 L.Ed.2d 786 (1982); see
also Vacco v. Quill, 521 U.S. 793, 799, 117 S. Ct. 2293, 138
L.Ed.2d 834 (1997) ("The Equal Protection Clause commands that
no State shall deny to any person within its jurisdiction the
equal protection of the laws"). The Clause does not, however,
require "things which are different in fact or opinion to be
treated in law as though they were the same." Plyler, 457 U.S.
at 216 (quoting Tigner v. Texas, 310 U.S. 141, 147, 60 S. Ct.
879, 84 L.Ed. 1124 (1940)). In other words, the Clause "is not

a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L.Ed.2d 313 (1985)).

A petitioner who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination that had a discriminatory effect on him. See McCleskey v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 95 L.Ed.2d 262 (1987); Whitus v. Georgia, 385 U.S. 545, 550, 87 S. Ct. 643, 17 L.Ed.2d 599 (1967). "Thus, to prevail under the Equal Protection Clause, [Petitioner] must prove that the decisionmakers in his case acted with discriminatory purpose." McCleskey, 481 U.S. at 292 (emphasis in original). "[I]f a law neither burdens a fundamental right nor targets a suspect class, [the Court] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." Romer v. Evans, 517 U.S. 620, 631, 116 S. Ct. 1620, 134 L.Ed.2d 855 (1996).

Here, Petitioner has not alleged that he is a member of a suspect class. Further, as discussed above, Petitioner does not have a liberty interest in participation in RDAP or in the potential reduction of sentence which may result from successful completion. "Therefore, in order to succeed on an equal

protection claim, Petitioner must establish that: (1) he was treated differently than other prisoners in his circumstances; and (2) such unequal treatment was the result of intentional or purposeful discrimination." Woodson v. Zickefoose, No. 11-292, 2011 WL 4352319, at *6 (D.N.J. Sept. 16, 2011) (citations omitted).

Petitioner alleges that that prison officials have been selecting inmates for RDAP "based on their own needs for meeting their own annual goals . . . of helping minorities over all others." (Letter 1-2, ECF No. 8); see also (Ex. to Pet. 4, ECF No. 1-1) (alleging that "Fort Dix has chosen, or been directed, to select those inmates for RDAP that reach the BOP's goals . . ."). Petitioner further asserts that another inmate at Fort Dix — who, like Petitioner, had no evidence in his PSR regarding substance abuse — was selected for the RDAP program based on the fact that he is a minority and, thus, his participation in the program would help to serve the BOP's annual goals of helping minorities. (Letter 2, ECF No. 8). Accordingly, Petitioner has arguably set forth a claim that he was intentionally treated differently than other similarly situated inmates.

However, even accepting Petitioner's allegations as true, Petitioner is not entitled to relief in this habeas petition. Specifically, as discussed above, Petitioner is not entitled to participation in the RDAP program because he had no

documentation of substance abuse in his central file or other collateral sources.  Therefore, even assuming an equal protection violation occurred, Petitioner remains ineligible for RDAP participation, and habeas relief in the form of reversing an agency action is not warranted.  In the event Petitioner wishes to pursue alternative relief for any alleged equal protection violation, he may do so in a civil rights action filed pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1971).  The Court makes no determination as to the merits or timeliness of such an action.

V.   CONCLUSION

For the reasons set forth above, Petitioner's request for a writ of habeas corpus will be denied.  An appropriate Order will follow.


____s/ Noel L. Hillman_____
NOEL L. HILLMAN
United States District Judge

Dated: September 8, 2016
At Camden, New Jersey